The Honorable Tom Sloan State Representative, 45th District 772 Highway 40 Lawrence, Kansas 66049
The Honorable Ralph M. Tanner State Representative, 10th District P.O. Box 647 Baldwin City, Kansas 66006
Dear Representatives Sloan and Tanner:
You request our opinion concerning agricultural use of land in the context of county zoning and taxation. A county is prohibited from applying its zoning regulations to land that is used for agricultural purposes, and land that is devoted to agricultural use is valued at a different rate for property tax purposes than residential or commercial properties. K.S.A. 19-2921; K.S.A. 1995 Supp. 79-1476. You request our guidance in defining what is an agricultural use of real property.
Before we address your queries it is necessary to review how the Kansas appellate courts have treated the issue.
COUNTY ZONING
Counties have general zoning authority for the protection of the public health, safety and welfare. K.S.A. 12-741. However, this authority does not apply to the use of land for agricultural purposes. K.S.A. 12-758; 19-2908; 19-2921; Van Gundy v. Lyon County Zoning Board, 237 Kan. 177
(1985). The purpose of the restriction on county zoning authority is to favor agricultural uses and farmers by attempting to "spare the family farmer from government regulation and not to discourage the development of the state's farm industry." Blauvelt v. Board of Leavenworth CountyCommissioners, 227 Kan. 110 (1980), Van Gundy, supra.
The Kansas appellate courts have addressed the issue of what kind of activities constitute an agricultural purpose and each case is dependent upon its facts. Attorney General Opinion No. 88-156. [Agricultural purpose includes the raising of canaries, Board of County Commissionersv. Brown, 183 Kan. 19 (1958); raising and feeding of livestock, Carp v.Board of County Commissioners, 190 Kan. 177 (1962); operation of livestock feedlots, Fields v. Anderson Cattle Company, 193 Kan. 558
(1964); blasting rock to excavate a pond for recreation and irrigation purposes, Van Gundy, supra; operation of a wildlife hunting preserve,Corbet v. Board of Shawnee County Commissioners, 14 Kan. App. 2d 123
(1989).] Moreover, zoning regulations and their exceptions are liberally construed in favor of the property owner. Koppel v. City of Fairway,189 Kan. 710 (1962); Corbet, supra. In short, the courts have generally given a broad reading to what constitutes agricultural use.
In Van Gundy, supra, the property owner successfully argued that blasting, crushing and selling rock was an agricultural purpose exempt from zoning regulations because each act contributed to building a pond which would serve as a water supply for irrigation and other agricultural purposes. In Corbet, supra, the court found an agricultural purpose for land used as a hunting preserve. The property owners testified that the primary use of the preserve would be hunting and fishing but ancillary uses would include providing hunters with dogs, clay target practice and providing coffee and snacks to hunters. The court concluded that the Corbets were cultivating the land to provide food for wildlife and the nature of the activity related to agriculture because it involved the "utilization of the resources of the land for the production of plants and animals useful to man." 14 Kan. App. 2d at 126-127. In State v.Scherer, 11 Kan. App. 2d 362 (1986) the court concluded that an agricultural use of property does not exclude other uses which were not agriculture related. Finally, in a recent unpublished decision, the Court of Appeals concluded that the planting of fruit, nut and Christmas trees may constitute an agricultural use of property. Board of CountyCommissioners, Wabunsee County v. Romine, Kansas Court of Appeals, No. 73,213, (April 12, 1996). [While unpublished opinions have no precedential value (Supreme Court Rule 7.04), we offer such opinions only as guidance.] In the Romine case, Mr. Romine obtained ten acres of farm land and placed a mobile home on the property which the county sought to remove. He testified that he intended to plant fruit trees, nut trees and Christmas trees on the property but the county's refusal to grant him a zoning permit to establish an agricultural site prevented him from proceeding with his plans.
 "The appellate courts of Kansas have had a number of occasions to consider what constitutes `an agricultural purpose'. No Kansas case specifically defined what an `agricultural purpose' is under K.S.A. 19-2921, but a number of cases have considered whether certain activities fall within that term. (Citations omitted). Using these cases as a guide, we agree with the district court that the planting of fruit, nut, and Christmas trees may constitute an agricultural use of the property. This does not conclusively settle the issue of whether Romine's property is exempt from the county zoning regulation, however. The board argues that in order for the agricultural purpose exemption to apply, the agricultural use of the property must be primary and not incidental to some other use.
 "K.S.A. 19-2921 implicitly qualifies the definition of `agricultural purposes' with regard to the primary use of the property by stating that the zoning exemption applies `so long as [the property is] used for agricultural purposes and not otherwise.' (Emphasis added). The agricultural use must be substantial enough to indicate that the owner is not masking a residential use of the property with an agricultural pretense as a ruse to gain exemption from zoning regulations. Here, Romine testified that he planned to plant fruit, nut and Christmas trees on the ten acres. His testimony, however, failed to indicate the extent of such planting he would do on the property. Without such evidence in the record, this court cannot possibly resolve the issue of whether Romine's agricultural plans were substantial enough to negate a reasonable inference that his plans were essentially residential rather than agricultural.
 "In resolving the issue of whether the use of the property is predominantly residential or sufficiently agricultural to be exempt from county zoning regulations, the trial court must examine the totality of the circumstances and draw reasonable inferences concerning the intent of the owner to engage in an agricultural endeavor or to avoid residential zoning regulations." (Emphasis added).
The Romine case indicates that the court will review the purported agricultural use of the land in order to determine whether it is "sufficiently agricultural" to be exempt from county zoning regulations or is instead a ruse to avoid residential or other zoning regulations.
TAXATION
K.S.A. 1995 Supp. 79-1476 provides, in part:
 "Valuations shall be established for each parcel of real property at its fair market value . . . in accordance with the provisions of K.S.A. 79-503a. . . .
 "In addition thereto valuations shall be established for each parcel of land devoted to agricultural use upon the basis of the agricultural income or productivity attributable to the inherent capabilities of such land in its current usage. . . .
 "For the purpose of the foregoing provisions of this section the phrase `land devoted to agricultural use' shall mean and include land, regardless of whether it is located in the unincorporated limits of a city, which is devoted to the production of plants, animals or horticultural products, including but not limited to: Forages; grains and feed crops; dairy animals and dairy products; poultry and poultry products; beef cattle, sheep, swine and horses; bees and apiary products; trees and forest products; fruits, nuts and berries; vegetables; nursery, floral, ornamental and greenhouse products. Land devoted to agricultural use shall not include those lands which are used for recreational purposes, suburban residential acreage, rural home sites or farm home sites and yard plots whose primary function is for residential or recreational purposes even though such properties may produce or maintain some of those plants or animals listed in the foregoing definition." (Emphasis added).
Kansas appellate courts strictly construe tax statutes in favor of the taxpayer and have construed the phrase "land devoted to agricultural use" in broad terms. Board of Johnson County Commissioners v. Smith,18 Kan. App. 2d 662, 668 (1993). In Smith, the court concluded that land devoted to agricultural use means "land devoted to the production of plants, animals or horticultural products."
 "Here, the legislature has provided a definition for the phrase "land devoted to agricultural use." K.S.A. 79-1476
provides that land devoted to agricultural use means land devoted to the production of plants, animals, or horticultural products. The statute then provides a nonexclusive list of examples of plants, animals, and horticultural products. . . ."
 "The legislature has defined the phrase "land devoted to agricultural use" in broad terms and in the absence of evidence of a contrary intent, this court will not impose a more narrow definition. Pursuant to this statute, if the land is used in the production of one of the items listed and is not used for rural or farm homesites, or suburban residential or recreational purposes, the land is properly classified as agricultural.
 "`Petitioners' chief complaint is that the owner is not seriously and in good faith devoting the property to agricultural use and is in fact a developer utilizing a loophole in the statute to keep his property taxes down until the property is ripe for development. Our difficulty with petitioners' argument is. . . .it makes no difference what intentions the owner has for the property in the future or what his or her motivations are for establishing an agricultural use." 18 Kan. App. 2d at 669-671 (emphasis added.)
In Flint Oak Ranch v. County Comm'r of Elk County, Kansas Court of Appeals, No. 72,316 (August 25, 1995) [unpublished], the court distinguished the Smith case and affirmed the board of tax appeal's (BOTA) conclusion that certain areas of a hunting and wildlife preserve were not devoted to agricultural use in a situation which involved a use of the property that was both agricultural and recreational (i.e. hunting). The court disagreed with the owners' argument that the definition of agricultural use under K.S.A. 1995 Supp. 79-1476 is not affected by recreational use of the land.
 "K.S.A. 1994 Supp. 79-1476 clearly states that land is not devoted to agricultural use if it is `used for recreational purposes' and its `primary function is for . . . recreational purposes even though such properties may produce or maintain some of those plants or animals listed in the foregoing definition.' The language of the statute definitively excludes land whose primary function is recreational although the land is also used for agricultural pursuits. The statute does not hinge solely on the presence or absence of significant agricultural use.
 "For an agricultural use classification, the statute has two basic requirements — agricultural use and a devotion to such use. The devotion element is clarified in the last sentence of the statute, which provides that certain types of land are not considered devoted to agricultural use even though such use occurs on the land."
The court acknowledged that the land in question had an agricultural use by virtue of the raising of the game hens and growing the grain to feed them but rejected the owners' proposition that the land was "devoted" to agricultural use because the recreational use was the primary function of the land.
Finally, in Ottawa County Appraiser v. Ireton, Kansas Court of Appeals, No. 73,911 (June 21, 1996) [unpublished], the Ireton's owned 23 acres of which 1 acre contained their residence and 22 acres were fenced pasture. The county classified the pasture as rural residential and the Iretons appealed to BOTA which reversed the county and classified the pasture land as agricultural. Citing the Smith case, the Court of Appeals affirmed BOTA's decision and rejected the county's argument that the Iretons were prohibited from splitting their property by classifying the residential lot as rural residential and classifying the pasture as agricultural.
 "The county's second argument is that the Iretons cannot `split' their property by classifying the residential lot as rural residential and classifying the pasture as agricultural. K.S.A. 1992 Supp. 79-1476
provides, in part, that `valuations shall be established for each parcel of real property at its fair market value.' (Emphasis added). Such valuations shall be made by the county appraiser pursuant to guidelines and time tables prescribed by the director of property valuation. (Citation omitted). The county relies on a valuation guideline that allegedly defines `parcel' as `a contiguous area of land within a section under one ownership, that can be included under one description for assessment or appraisal purposes, after consideration of all legal and practical elements.' Because the Ireton's property must be considered a single parcel, the county asserts, the property can only be classified as residential because they have a house on the land. This argument must fail.
 "The problem with the county's argument is that it focuses on one element of the definition `parcel' to the exclusion of another element. The county focuses on the fact that the Ireton's land is contiguous, but overlooks the fact that it cannot be included under one description for assessment or appraisal purposes. In other words, because the Ireton's pasture and homesite fall under different descriptions, they may be considered as separate parcels."
As in the county zoning situation, it appears that Kansas appellate courts broadly construe the definition of land devoted to agricultural use and consider the list of examples in K.S.A. 1995 Supp. 79-1476 to be nonexclusive but will review mixed use property in terms of what the primary use is in order to ensure that the property is "devoted" to agricultural use.
With this background in mind we address your questions.
"1. There appear to be no Kansas cases or statutes that hold orestablish a percentage ratio for determining how much of the use of aproperty must be agricultural in order to qualify for the agricultural useexemption. However, if a county has a minimum acreage specified before aproperty may be platted (e.g., 3 or 5 acres), is it reasonable tointerpret existing statutes to infer that agricultural ground must begreater than that amount? In other words, if a residential site must befive acres and platted, is it appropriate under existing statutes toinfer that agricultural land, for whatever purpose, must be at least 5plus acres?"
There are no cases that address a percentage ratio in determining whether land is sufficiently agricultural pursuant to K.S.A. 19-2921 or K.S.A. 1995 Supp. 79-1476 but it is our opinion that any regulation which would seek to define a percentage ratio may be invalid to the extent it defines agricultural use in a more restrictive sense than how the courts construe the term. In re Tax Appeal of Alex Masson, Inc.,21 Kan. App. 2d 863 (1995); Attorney General Opinion No. 79-260. Moreover, K.S.A. 19-2921 is uniformly applicable to all counties so the latter are precluded from legislatively providing their own definition of land used for agricultural purposes. Romine, supra.
"2. Regardless of the answer to question #1, under existing statutesdoes the occupation or business of landscaping (as separate fromoperating a nursery) constitute agricultural use?"
Whether land qualifies for a zoning exemption under K.S.A. 19-2921 or an agricultural classification pursuant to K.S.A. 1995 Supp. 79-1476
will depend upon the facts. Landscaping is defined as the art of dealing with the depiction of natural scenery by contouring the land and planting flowers, scrubs or trees. Webster's II, New Riverside University Dictionary 675 (1988). While there is no Kansas case on point, In Re TaxAppeal of Alex Masson, Inc., supra, concluded that a greenhouse operation that grows tropical foliage and flowering plants for decorative purposes constitutes land devoted to agricultural use pursuant to K.S.A. 1995 Supp. 79-1476.
 "According to Black's Law Dictionary 68 (6th ed. 1990), agriculture is defined as `[t]he science or art of cultivating the soil, harvesting crops, and raising livestock and also as the science or art of the production of plants and animals useful to man and in varying degrees the preparation of such products for man's use and their disposal.' Consequently, common sense leads us to the conclusion the products grown by petitioner fall within the definition of an agricultural use as defined by K.S.A. 79-1476." 21 Kan. App. 2d at 869.
In Smith, supra, the court opined that if land is used in the production of any of the items mentioned in K.S.A. 1995 Supp. 79-1476 and is not used for a rural or farm homesite or a suburban, residential or recreational purpose, the land is properly classified as agricultural. Consequently, if a parcel of land is devoted to the production of plants or horticultural products including but not limited to nursery, floral, ornamental or greenhouse products, it may fall within the ambit of land devoted to agricultural use.
As far as the zoning exemption is concerned, whether the land is being used for agricultural purposes will depend upon the use of the property rather than a label which purports to describe the activity on the property. The Romine case concluded that the planting of fruit, nut and Christmas trees may constitute an agricultural use if the use is substantial enough to indicate that the owner is not masking a residential use of the property as a ruse to gain an exemption and that a court must look at the totality of circumstances in making that determination.
"3. Under existing statutes, can contiguous land not owned by aproperty owner utilized for agricultural use by that same personconstitute agricultural use for the property actually owned? In otherwords, can agricultural use of rented, leased, or otherwise legallyoccupied land convey agricultural exempt status to other contiguousproperty?"
In both a zoning and taxation context, the zoning exemption/tax classification analysis applies only to land owned by the taxpayer.
"4. Can land no greater than 1.5 acres containing a primaryresidence, appropriate landscaping, and a business building/garagequalify for agricultural use tax and zoning exemptions, if a subsidiarybusiness is landscaping?"
Whether land is devoted to agricultural use pursuant to K.S.A. 1995 Supp. 79-1476 or used for agricultural purposes pursuant to K.S.A.19-2921 will depend upon the facts. The Ireton case touched on the mixed use issue [residential and pasture] where the court approved "splitting" the owner's property by classifying the residential parcel as rural residential and classifying the pasture parcel as agricultural so it appears that a property owner's land may be split for taxation purposes and valued according to the use of each parcel. However, if the property cannot be split and there are both agricultural and recreational uses, a court may consider which use is primary. Flint Oak Ranch, supra.
As far as zoning is concerned, the Romine case concludes that a court will review the totality of circumstances and determine whether the agricultural use is substantial enough to establish that the owner is not masking a residential or nonagriculture use of the property with an agricultural pretense as a ruse to gain exemption from zoning regulations.
"5. If agricultural land is platted and subdivided with constructionoccurring on some of the plats, do existing statutes prohibit exemptingthe remaining platted, but undeveloped land, as agricultural use? Inother words, if 20 acres zoned and taxed as agricultural use are dividedinto four plats and houses are constructed on two plats, can theremaining 10 acres (2 plats) retain their agricultural designation ifthey are for sale for residential purposes?"
From a taxation standpoint, the court will look at how the property is being used. Smith, supra. What the owner intends to do with the property is irrelevant. Ireton, supra. If the 10 acres at issue here are producing plants or horticultural products and not being used primarily for recreational or residential purposes, a court could conclude that the land is devoted to agricultural use. Flint Oak Ranch, supra.
In a zoning situation, the appellate courts have concluded that agricultural use of property does not preclude other uses but the Romine
case indicates that a court may look at the agricultural use and determine whether such use is substantial enough to indicate that the owner is not masking a residential or nonagricultural use.
"6. Do the statutes or case law address the issue of dual multipleuses of property and the agricultural exemption in a manner that shouldprovide guidance to county commissioners?"
Except for the cases mentioned herein, there is little guidance from the statutes or appellate court cases on multiple use property in regard to the agriculture zoning exemption and the taxation of agricultural land.
Summarizing our conclusions, where real property has both agricultural and nonagricultural uses, a court may consider whether the parcels can be split and valued accordingly, or, if the parcels cannot be classified separately, a court may consider which use is primary in order to determine whether the property is devoted to agricultural use pursuant to K.S.A. 1995 Supp. 79-1476. Whether real property is exempt from zoning regulations pursuant to K.S.A. 19-2921 will require a determination, based upon the totality of circumstances, whether the agricultural use is substantial enough to establish that the owner is not masking a residential or nonagriculture use with an agricultural pretense to gain exemption from zoning regulations. Whether a landscaping business qualifies for a zoning exemption pursuant to K.S.A. 19-2921, or may be classified as land devoted to agricultural use pursuant to K.S.A. 1995 Supp. 79-1476, will depend upon the facts, not the label which purports to describe the activity on the property. Moreover, any regulation that seeks to define a percentage ratio for agricultural land may be invalid to the extent it defines agricultural use more restrictively than the courts construe the term. Finally, the zoning exemption and tax classification analysis apply only to land owned by the taxpayer.
Very truly yours,
 CARLA J. STOVALL Attorney General of Kansas
 Mary Feighny Assistant Attorney General
CJS:JLM:MF:jm